**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIE WHITE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-1974** |
| | : | |
| **LT. BROOKE GAGLIONE,** *et al.*, | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**ROBRENO, J.**                                                         **JUNE 1, 2022**

Plaintiff Willie White, a pretrial detainee at Lehigh County Jail ("LCJ") filed this *pro se*
civil rights Complaint naming as Defendants Lt. Brooke Gaglione, LCJ Director Janine Donate,
and Warden Kyle Russell.  White also seeks to proceed *in forma pauperis*.[1]  For the reasons that
follow, the Court will grant White leave to proceed *in forma pauperis* and dismiss the
Complaint.

## I.     FACTUAL ALLEGATIONS

White's allegations are brief.  He asserts his constitutional rights were violated on March
9, 2022 when his cell was "ambushed" by Defendant Gaglione "and her minions" because White
had obscured the view into the cell with a towel.  (Compl. (ECF No. 2) at 4.)  White also alleges
that he "had reported this cycle 20 previous times in the last 2 ½ months to no avail." (*Id*.)  He
asserts the incident was captured on video.  (*Id*.)  He asserts that Gaglione "left my person in
inhumane condition," which violated his rights.  (*Id*.)  He also asserts that Gaglione was acting
outside the scope of her employment when she left him in his cell without a mattress, pillow,

---

[1] White has filed several civil actions in the weeks predating the filing of this case.  He
attached his inmate account statement in Civil Action 22-1226, but failed to do so in this case.  In
the Order that accompanies this Memorandum, the Clerk will be directed to file a copy of
White's inmate account statement from Civil Action 22-1226 on the docket of this case.

sheets, blankets, toothpaste, soap, toilet paper, or towels for eleven and a half hours.  (*Id*.)  White

seeks to have Gaglione fired from her job and money damages.[2]  (*Id*.)

In a handwritten page attached to the form White used to file his Complaint he asserts

that Defendant Donate is "liable for acquiesced knowledge, lack of supervision."  (ECF No. 2-1

at 1.)  He asserts that Defendant Russell is "liable for acquiesced knowledge, lack of training."

(*Id*.)  Finally, he asserts that both Donate and Russell "did nothing to rectify the situation" or

reprimand Gaglione, and are liable for violations of his due process and equal protection rights,

even though "I was still giving [sic] full, direct punishment for my so called violations of the

rules."  (*Id*.)

## II.   STANDARD OF REVIEW

The Court grants White leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss White's Complaint if it fails to state a claim. The

Court must determine whether the Complaint contains "sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the

facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the

plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts

sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir.

2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory

---

[2] In the portion of the form White used to file his Complaint that asks the litigant to
describe the relief he or she seeks, in addition to his request for money damages and to have
Gaglione fired, White wrote "Why was my legal work confiscated from my cell and inspected
outside my presence?"  (Compl. at 4.)  He does not otherwise describe the context for this
question or ascribe any act to any named Defendant.  To the extent this question asserts a claim
for relief, it is conclusory and not plausible.

allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As White is proceeding *pro se*, the Court

construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v.*

*Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

White seeks money damages for violation of his constitutional rights.  The vehicle by

which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of

the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).  Also, "[a] defendant in a civil rights action must have personal involvement in the

alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988);

*Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular

'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845

F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution").

### A.   Claims against Lt. Gaglione

White's allegation that Lt. Gaglione violated his constitutional rights when she

"ambushed" his cell and apparently removed prison-issued and personal items fails to allege a

plausible claim.  First, "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").  Thus, White's allegation that Gaglione "ambushed" his cell by entering and searching it, or confiscating items fails to allege a plausible constitutional claim.

Second, a prisoner detained by Lehigh County cannot state a constitutional claim based on the loss of his personal property.  *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533)).  While the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Con. Stat. § 8541, provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," there are exceptions to this grant of immunity.  *See id*. § 8542(b).  One such exception is that a political subdivision like Lehigh County may be held

> liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
> > (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).  As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

Because, under these provisions, White has a meaningful post-deprivation remedy available for his property loss claim in an appropriate state court, his constitutional claim is not plausible and must be dismissed.

The allegation that Gaglione "left [White's] person in inhumane condition," because she apparently confiscated prison-issued property such as White's mattress, pillow, sheets, blankets, and towels, also fails to allege a plausible constitutional violation.  The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  "Unconstitutional punishment typically includes both objective and subjective components."  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."  *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'"  *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).  Courts should consider the totality of the circumstances in evaluating such a claim.  *Bistrian*, 696

5

F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").  Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that  "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Considering the totality of the circumstances White describes, his "punishment" claim is not plausible because he concedes that Gaglione had a legitimate non-punitive government purpose when she allegedly seized items that White did, or could have, used to obscure the view into his cell by corrections officials.  While White appears to assert that he had repeatedly engaged in that rule-breaking behavior prior to this occasion without consequence, his concession that he violated prison rules on this occasion by obscuring the view into his cell suggests that the restriction was not excessive in light of the purpose to stop him from doing so.  Thus, he has failed to plausibly allege the subjective component of a Fourteenth Amendment claim.  Moreover, while being deprived of these items for 11 ½ hours might have made White's confinement temporarily uncomfortable, the conditions he describes do not rise to the level a sufficiently serious deprivation.  *See Milhouse v. Gee*, No. 09-2134, 2011 WL 3627414 (M.D. Pa. Aug. 17, 2011) (denial of mattress for "short period" of days was not sufficiently serious deprivation); *Castro v. Chesney*, No. 97-4983, 1998 WL 767467 (E.D. Pa. Nov. 3, 1998) (denial of mattress for two days was not sufficiently serious deprivation); *Williams v. Campbell*, No. 07-885, 2008 WL 2816089, at *6 (E.D. Pa. July 18, 2008) (denial of a pillow for five nights does not constitute cruel and unusual punishment under the Eighth Amendment); but see *McClure v. Haste*, No. 19-2200, 2020 WL 3830918 (3d Cir. July 8, 2020) (holding that evidence of denial of

mattress for 200 days causing back injury created a genuine issue of fact whether there was a sufficiently serious deprivation).

        **B.**        **Claims against Defendants Donate and Russell**

        White asserts that Defendant Donate and Russell are liable for money damages under § 1983 because they allegedly had knowledge of the incident, failed to supervise Gaglione, or failed to adequately train her, and are liable for violations of his due process and equal protection rights.  These allegations also fail to state a plausible claim.

        First, White's attempt to hold the Defendants liable on the basis of their holding supervisory positions at LCJ is not plausible.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held

liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho*, 423 F.3d at 354)).  White has failed to allege that Donate or Russell established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, and he has failed to allege any personal involvement on their parts in the incident involving Defendant Gaglione, or in any other instance that violated his due process and equal protection rights.  Accordingly, the claims against them based on their status as supervisory officials at LCJ are not plausible.

White's allegation that Donate and Russell failed to train Gaglione is also not plausible. "Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008).  A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice.  *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).  Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable.  In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . .  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . .  Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

8

*Id.* at 390-91.  White fails to allege that the Defendants instituted a policy that created an unreasonable risk of constitutional injury, that they were aware of or indifferent to this unreasonable risk, and that he was injured as a result of the policy or practice.  Rather, White's claim that Donate and Russell failed to train Gaglione is entirely unsupported by factual allegations.  So too are his allegations that they are liable for violations of his due process and equal protection rights.  Because the claims are conclusory, they must be dismissed on this ground.  *See Iqbal*, 556 U.S. at 678.  Moreover, because the underlying claims concerning Gaglione's "ambush" of his cell are not plausible, the derivative failure to train and failure to supervise claims also are not plausible for this additional reason.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss White's Complaint.  Because any attempt to amend his claims would be futile, the dismissal will be with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile.").  An appropriate Order follows.

BY THE COURT:

*Eduardo C. Robreno*
**EDUARDO C. ROBRENO, J.**
